JUDGE STEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

10th AVENUE HOSPITALITY GROUP,
LLC,

                        Plaintiff,

        - against -

AMC ENTERTAINMENT, INC.,
LIVE! HOLDINGS, LLC,
THE CORDISH COMPANY, and
REED CORDISH,

                     Defendants.

-------------------------------------------------------x

Case No. 10 Civ.     5274

ECF CASE



**COMPLAINT**

      Plaintiff, 10th AVENUE HOSPITALITY GROUP, LLC ("TAHG") by its

undersigned attorneys, for its Complaint herein, alleges:

      1.     This is an action for trademark infringement, unfair competition and false

designation of origin, and dilution arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and

for unfair competition and dilution under New York State law, as more fully described below.

This action seeks damages and injunctive and declaratory relief to halt defendants' trademark

infringement, unfair competition and dilution, in this District and elsewhere and to protect

plaintiff's famous trademark MARQUEE for its nationally-known top-tier nightclub and

entertainment services.  In 2003, plaintiff opened its famous MARQUEE nightclub in this

District in Manhattan. Since then, plaintiff has expanded the MARQUEE trademark nationally to

various events under the MARQUEE trademark including at major national nightclub and

entertainment venues in Miami Beach, Florida, Park City, Utah and Toronto, Canada. Plaintiff

also announced several months ago its planned expansion to the major nightclub market of

Las Vegas, Nevada.   This action seeks to halt (A) defendant AMC ENTERTAINMENT, INC.'s

("AMC") unauthorized 2009 adoption and use in commerce for its Kansas City restaurant in its

AMC Mainstreet Theater complex of the name and mark "THE MARQUEE" and "THE

MARQUEE BAR and GRILL", which is confusingly similar to plaintiff's famous trademark

MARQUEE and (B) the remaining defendants' fraudulent U.S. trademark applications and

unfair competition, seeking to register and planning to use in a venture with co-defendant AMC

the confusingly similar marks THE MARQUEE and THE MARQUEE BAR & GRILL, for

identical "nightclub and entertainment services" and other similar services, for which plaintiff's

MARQUEE trademark has been long previously used.   This ongoing infringement and pending

U.S. trademark applications and unfair competition are causing and unless enjoined, will cause

irreparable harm to plaintiff and its business and reputation as more fully set forth below.

I.     <u>Jurisdiction and Venue</u>

2.     This Court has jurisdiction of this action pursuant to 15 U.S.C. §§ 1121 and

1125(a), §§ 28 U.S.C. 1331, 1338, 1367, and principles of supplemental jurisdiction.   Venue is

proper in this district under 28 U.S.C. § 1391(b).

3.     Among other things, as hereinafter alleged, defendants directly or through their

agents, are doing business and are found in this district, have committed tortious acts within this

District or have committed tortious acts without this District causing injury to plaintiff within the

District.  Upon information and belief, defendants have offices and are found in this District,

regularly solicit business or engage in a persistent course of conduct and derive substantial

revenue from services and goods sold in this District directly or through their interactive web

sites, and defendants expect and should reasonably expect their acts to have consequences in the

State of New York and they derive substantial revenue from interstate commerce.  Moreover, the

tortious acts giving rise to the causes of action complained of herein and defendants'
infringement, dilution and fraudulent conduct have been and are occurring in substantial part in
this judicial District and are causing confusion of the public and injury to plaintiff within this
District and elsewhere.

## II.        The Parties

4.      Plaintiff, TAHG is a limited liability company organized and existing under the
laws of the State of New York, having a principal place of business at 289 Tenth Avenue, New
York, NY 10001.  Since December of 2003, TAHG has been and still is engaged in the operation
of the nationally famous MARQUEE nightclub and bar at 289 Tenth Avenue in downtown
Manhattan in this judicial District, under its famous trademark MARQUEE.  A copy of
plaintiff's Certificate of Doing Business as MARQUEE filed in 2003 and pages from plaintiff's
website www.marqueeny.com are annexed hereto as Group Exhibit A.  Over many years,
plaintiff's MARQUEE nightclub and bar and other entertainment events conducted under the
MARQUEE trademark in interstate commerce across the United States have made plaintiff's
MARQUEE trademark famous for providing customers with a chic and high quality nightclub
and entertainment experience, with uniquely designed decors, outstanding talent, entertainment,
and service and celebrity patrons.  As a result, plaintiff's MARQUEE nightclub and bar attracts a
patronage that often includes celebrities, professional athletes, business and political leaders, in
addition to local residents and guests from foreign countries.

5.      Upon information and belief, defendant AMC ENTERTAINMENT, INC.
("AMC") is a corporation organized and existing under the laws of Missouri, with a principal
place of business at 920 Main Street, Kansas City, MO 64105.  AMC is directly or indirectly the
owner of or doing business as a restaurant opened in 2009 called "THE MARQUEE" and "THE

MARQUEE BAR & GRILL" (collectively "The Marquee") located at 1400 Main Street, Kansas City, MO 64105.  AMC advertises this infringing name and restaurant on the Internet in New York and elsewhere through its interactive web site www.themarqueekc.com which has contacts for reservations.  Copies of pages from this website are annexed hereto as Group Exhibit B. AMC also has offices and theaters and is found in this District.

  6.  Upon information and belief, defendant LIVE! HOLDINGS LLC ("LHLLC") is a limited liability company organized and existing under the laws of Maryland with a principal place of business at 601 East Pratt Street, Suite 600, Baltimore, MD 21202.  LHLLC is a subsidiary or affiliate of co-defendant The Cordish Company.  In February 2009, LHLLC filed two "intent to use" ("ITU") trademark applications in the U.S. Patent and Trademark Office ("USPTO") for the marks THE MARQUEE and THE MARQUEE BAR & GRILL.  Upon information and belief, LHLLC's conduct in this regard is in furtherance of a joint venture or other project with AMC to promote its new The Marquee in Kansas City.

  7.  Defendant The Cordish Company ("Cordish") is a corporation organized and existing under the laws of Maryland with a principal place of business at the same address as co-defendant LHLLC and upon information and belief, has offices in this District.  Cordish also promotes its extensive real estate, restaurant and nightclub business on various of its interactive Internet web sites in this District, including www.cordish.com and www.cordish5.com and similar domains.   Upon information and belief, LHLLC and Cordish or one of their affiliates has a joint venture arrangement with co-defendant AMC to manage certain of AMC's intellectual property and to assist in obtaining trademark protection for defendant AMC's new The Marquee restaurant.

8.      Defendant REED CORDISH is an individual who, upon information and belief, is a citizen of the State of Maryland and the President of LHLLC and a Vice President of Cordish in charge of restaurant and nightclub real estate development.  Upon information and belief, REED CORDISH is a knowing, moving, conscious and active force in the infringement by AMC, in defendant LHLLC's fraudulent trademark applications and in the unlawful conduct of defendants hereafter alleged. Upon information and belief, REED CORDISH has been in New York and in New York nightclubs on numerous occasions in connection with developing Cordish's own restaurant and nightclub venues.  REED CORDISH has also met with plaintiff's owners on several occasions and in New York in 2009.

9.      Upon information and belief, defendants and others unknown to plaintiff created, own, advertise and/or operate the restaurant which they recently opened in Kansas City under the infringing name "The Marquee" and "The Marquee Bar & Grill" copying plaintiff's trademark and portions of plaintiff's interior design, thereby causing confusion with plaintiff's nightclub in this District and elsewhere.

### III.      FACTS COMMON TO ALL CLAIMS FOR RELIEF

#### Plaintiff's Famous Trademark MARQUEE

10.      Since long prior to the acts complained of herein, TAHG has adopted and used in interstate commerce the mark, name and style "MARQUEE" in connection with its famous nightclub and bar located at 289 Tenth Avenue in downtown Manhattan (the "MARQUEE nightclub") and other nightclub and entertainment venues throughout the country..

11.      Plaintiff's MARQUEE trademark is arbitrary and distinctive for plaintiff's services.  Plaintiff's MARQUEE nightclub was conceived in 2003 to offer a new and unique nightclub experience, created by experienced and successful nightclub owners, using award-

winning professional architects and interior designers at a cost of over $2 million. MARQUEE nightclub has multiple rooms with over 6000 square feet of space, featuring a 15 foot high ceiling with dramatic chandeliers and changing colored lights, a central elevated light platform, dance floor, banquettes and high-top seating. MARQUEE nightclub also has a double wishbone shaped staircase leading to an elevated mezzanine space with a 25 foot bar, and seating on couches, ottomans and banquettes, private bathrooms, separate entrance and separate DJ and sound system. A third lounge room with separate bar, seating and lighting is available for private parties. MARQUEE nightclub can accommodate 600 patrons.

12.     MARQUEE nightclub was created and is managed by experienced club owners who have extensive experience and well-publicized success and know-how in designing, staffing and operating a triple A level nightclub with excellent service, top DJ talent and music, ambience and clientele. As a result MARQUEE nightclub has become famous for providing patrons with a unique and high class nightclub and entertainment experience. In over six years of continuous and successful operation, plaintiff's MARQUEE nightclub has achieved an excellent reputation as the VIP "place to be" as reported in *USA Today* after only one year. The well known review ZAGAT Survey® New York City Nightlife has repeatedly described plaintiff's MARQUEE nightclub as "star studded," "glitz" with "A-listers" and "scene-wise one of the 'hottest' in town."

13.     Plaintiff's MARQUEE nightclub was an immediate and now long term success. In its 7th year of continuous successful operation, MARQUEE nightclub has outlasted the typical 3 – 5 year life span of new nightclubs. By reason of its unique and high quality design and entertainment experience, MARQUEE nightclub has achieved great fame and success and attracts patrons ranging from celebrities, professional athletes and political leaders to tourists and

ordinary New Yorkers. MARQUEE nightclub customers have included, among other stars and celebrities (in no particular order): Jay-Z, P. Diddy, Paris Hilton, Leonardo DeCaprio, Mick Jagger, Uma Thurman, Demi Moore, Ashton Kutcher, Jamie Foxx, Allen Iverson, Mario Lopez, Bono, George Clooney, Matt Damon, LeBron James, Britney Spears, Justin Timberlake, Gisele Bundchen, and Karolina Kurkova. As reported in the media, many celebrities have held their own private parties at MARQUEE nightclub, including Christina Aguilera, Derek Jeter and Heidi Klum. MARQUEE nightclub has also been the scene for filming of or a venue included in the plot of various movies and television shows, including *Prime, CSI New York,* and *The Sopranos.* MARQUEE was specifically mentioned in *Gossip Girl, Ugly Betty*, and *Saturday Night Live.* MARQUEE nightclub is often featured in the Page Six celebrity column of the *New York Post.*

14.     By reason of the foregoing, plaintiff's MARQUEE nightclub has achieved great fame and fortune and MARQUEE nightclub is the place to be and to be seen for stylish and high-profile patrons and celebrities alike.

15.     In early 2009, The Harvard Business School published a copyrighted 22 page Case Study Paper No. N9-509-019 entitled *Marquee: The Business of Nightlife* (available at http://www.hbsp.harvard.edu) which fully explored the history and success of plaintiff's MARQUEE nightclub. The paper received widespread and favorable media coverage and plaintiff's owners were invited to Harvard Business School to participate in a question and answer session for two of the business school classes. As reported in "Nightclub & Bar" (http://www.nightclub.com), the case study was "a tremendous hit, garnering publicity and national recognition from media sources like Page Six of the New York Post." Other reports

trumpeted that the "five-plus-year run recognized in this Harvard review underscores the hard and brilliant work of the MARQUEE team."

16.     Plaintiff's success and the fame of its MARQUEE trademark are also reflected in its substantial revenues, ranging from $6 million to $13 million annually and representing one of the highest grossing single venue nightclubs in New York City and nationally and serving an estimated 2.5 million plus guests in the last six years.

17.     Plaintiff's MARQUEE nightclub's fame and success has been expanded nationally since as early as 2004, when it hosted a MARQUEE Miami party for the Winter Music Conference.  In each year from 2005 to 2008, plaintiff hosted a series of weekly MARQUEE events in Park City, Utah, during the Sundance Film Festival, which is attended by thousands of high-profile guests.  MARQUEE nightclub has also combined with Fortune 500 firms such as Panasonic in Park City and with Motorola at the Toronto Film Festival.  These events also included appearances by stars and celebrities as both performers and patrons. Examples of plaintiff's prior marketing and advertising of these national events are annexed hereto as Group Exhibit C.

18.     The MARQUEE trademark and nightclub have long been extensively advertised in a wide range of print and electronic media and the trademark has been extensively used in interstate commerce over the last six years.  Plaintiff also has an interactive website, www.marqueeny.com which is widely accessed.

19.     Plaintiff's business in connection with the MARQUEE mark is successful and is expanding.

20.     Plaintiff has devoted substantial time, effort and expenditures for the creation of MARQUEE nightclub and for advertising, public relations, and marketing its nightclub facilities,

national events and the MARQUEE trademark.  Plaintiff has widely used the MARQUEE

trademark in the conduct of its business for many years.  Plaintiff has achieved great success

under its MARQUEE trademark, with millions of dollars in annual revenue and serving millions

of guests.  As a result of all the foregoing activities, plaintiff's mark MARQUEE became famous

nationally in nightclub and restaurant circles and among the public and is now well known.

21.     Unsolicited media coverage has hailed plaintiff's MARQUEE trademark,

nightclub, and nightlife experience.  MARQUEE nightclub has received favorable media reports

in *The New York Times,  USA Today, New York Magazine,  The New York Post, People

Magazine, US Weekly*, and *Zagat Survey (Nightlife)* to name a few. Samples of this media

coverage are annexed as Group Exhibit D.

22.     As a result of the widespread advertising, publicity and success of MARQUEE

nightclub, plaintiff's distinctive MARQUEE trademark is now famous by its identification with

the excellent and exciting quality of plaintiff's facilities, ambience, talent, clientele and services.

The MARQUEE trademark is now widely known by the public, businesses, nightclub patrons,

and by the nightclub business, the media and others who have come to identify the MARQUEE

trademark as indicating the single source of high quality nightclub entertainment offered by

plaintiff.

23.     By reason of the foregoing, the MARQUEE trademark used by plaintiff in

interstate commerce has come to enjoy a favored reputation and to create recognition of

plaintiff's nightclub services and has obtained a secondary and distinctive meaning to identify

plaintiff as the sole source of MARQUEE nightclub and entertainment services and to

distinguish plaintiff's nightclub and services from others.

24.     As part of plaintiff's continuing growth and natural expansion of its business under the MARQUEE brand already used in multiple major markets as alleged above, plaintiff has been proceeding for months with plans to license a nightclub in Las Vegas to open under plaintiff's famous MARQUEE trademark. This plan was publicly announced in or about April 8, 2010. Moreover, plaintiff's expansion is natural and expected as it follows that of other high-end restaurants and nightclubs that have expanded from New York to Las Vegas, as exemplified by similar prior expansions of famous establishments which began in New York and then opened in Las Vegas such as TAO, NOBU, Light, Le Cirque, Sushi Samba and Dos Caminos.

25.     Plaintiff has a very short deadline to commit to the use of its trademark MARQUEE in Las Vegas and this commitment, or an inability to commit, will affect all aspects of advertising, marketing and signage to be prepared for and used in Las Vegas under the MARQUEE trademark. In addition, plaintiff reasonably expects that opening MARQUEE nightclub in Las Vegas will increase plaintiff's New York business and reputation, in an amount which cannot be determined in monetary value.

26.     However, plaintiff has within the last few days learned of defendants' plans to open an infringing restaurant or nightclub in Las Vegas under the same or a confusingly similar MARQUEE name.  Plaintiff also recently learned of defendant LHLLC's filing of the two ITU trademark applications seeking to register trademarks using MARQUEE as more specifically described below and which would purport to give LHLLC national rights in those marks.  This filing occurred long after plaintiff's priority of use in 2003 and in willful disregard of plaintiff's prior rights. Accordingly, defendants' aforesaid conduct is interfering with plaintiff's plans for use in Las Vegas of its own senior trademark MARQUEE and is a source of damage and injury

to plaintiff and, unless defendants are enjoined by the Court, will cause irreparable injury to plaintiff.

### Defendants' Infringement, Unfair Competition and Fraudulent Conduct

27.     Defendant Cordish promotes itself as a company with 100 years experience which has "grown into a global conglomerate of businesses defined by two major areas of expertise: one of the leading real estate development companies and most successful operators of entertainment districts and casinos in the world." Cordish further claims "extensive expertise" in "entertainment and mixed use" real estate projects among others. (*See* www.cordish.com).

28.     Defendant LHLLC, as a subsidiary and with the approval of its parent company co-defendant Cordish, many years ago commenced upon a campaign of filing federal ITU trademark applications with the USPTO purporting to claim national rights for a variety of alleged trademarks, for use in connection with nightclubs, restaurants and entertainment services. Upon information and belief, since 2007, LHLLC or Cordish or its affiliates have filed over 125 such federal trademark applications with the USPTO, many of which were later abandoned. LHLLC or Cordish currently have at least 40 such pending applications seeking to register 40 trademarks.

29.     Defendants in making these filings seeking trademark rights, and defendant AMC in naming its Kansas City restaurant The Marquee and The Marquee Bar & Grill, are bound by the trademark principle that "the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer."

30.     In addition, individual defendant Reed Cordish, as President of LHLLC and a Vice President of Cordish has since at least 2005 been in a Vice President of the Cordish Company's "entertainment, restaurant, club and mixed-use divisions" according to the Cordish

web site at www.cordish.com and reports in *The Baltimore Sun* newspaper.  Reed Cordish has substantial experience and expertise in creating and managing such restaurant and nightclub developments and therefore is or should be knowledgeable as to nationally successful and preexisting trademarks in this field.  For example, a published report in a *Baltimore Style Magazine* in May-June 2007 described Reed Cordish's achievement in bringing the best of other famous clubs to a project in Baltimore with a club named MOSAIC.  According to the report: "Developer Reed Cordish has combed the clubs of New York, Miami and L.A. to bring the best elements back to Baltimore.  The vast space is dramatically designed, with a stunning bar, lots of private VIP seating . . . [and] an international roster of guest DJ's . . . ."  In addition, Reed Cordish is an acquaintance of plaintiff's owners and is familiar with the club and bar scene in New York City, including the plaintiff's famous MARQUEE nightclub.  By reason of their aforesaid business, expertise and experience with nightclubs and nightclub development, defendants Cordish, LHLLC and Reed Cordish (collectively the "Cordish Defendants") had actual knowledge of plaintiff's famous MARQUEE nightclub prior to February 2009 when they authorized and LHLLC filed the two ITU trademark applications using the word MARQUEE which are at issue in this action.

31.     Upon information and belief, some time prior to 2009, the aforesaid defendants entered into a joint venture or other arrangement with co-defendant AMC to develop a restaurant, bar and entertainment area in an AMC theater development in Kansas City, MO known as AMC's Mainstreet Theater.

32.     In or about February 2009, in furtherance of that plan with co-defendant AMC, defendant LHLLC, with the approval, knowledge and support of its parent company, Cordish and its president Reed Cordish, filed two ITU federal trademark applications with the USPTO

claiming an intent-to-use in the future the trademarks THE MARQUEE (Application Serial

No. 77662010) and THE MARQUEE BAR & GRILL (Application Serial No. 77662227).  The

applications sought registration of those trademarks for "night club, entertainment services,

namely providing musical venues for live and pre-recorded concerts" and for "restaurant,

cocktail lounge and bar services."  These services are the same or closely similar to those long

previously provided by plaintiff under its MARQUEE trademark.

33.     In accordance with applicable law and USPTO rules, both applications in the

name of LHLLC required the applicant by its officer or attorney to sign, and LHLLC's

representative did sign and submit to the USPTO on the public record, the following declaration

on February 3, 2009:

### Declaration:

> The undersigned, being hereby warned that willful false statements and the like so
> made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section
> 1001, and that such willful false statements, and the like, may jeopardize the
> validity of the application or any resulting registration, declares that he/she is
> properly authorized to execute this application on behalf of the applicant; he/she
> believes the applicant to be the owner of the trademark/service mark sought to be
> registered, or, if the application is being filed under 15 U.S.C. Section 1051(b),
> he/she believes applicant to be entitled to use such mark in commerce; to the best of
> his/her knowledge and belief no other person, firm, corporation, or association has
> the right to use the mark in commerce, either in the identical form thereof or in such
> near resemblance thereto as to be likely, when used on or in connection with the
> goods/services of such other person, to cause confusion, or to cause mistake, or to
> deceive; and that all statements made of his/her own knowledge are true; and that
> all statements made on information and belief are believed to be true.

Copies of these Declarations as submitted are annexed hereto as Group Exhibit E.

34.     In both applications, the aforesaid statements were false and fraudulent and were

known by the applicant LHLLC and its President defendant Reed Cordish and its parent

company Cordish, to be false and fraudulent in that all of said defendants had actual knowledge

that plaintiff had many years earlier opened, operated and made famous MARQUEE night club

in New York City and nationally and thus had priority of use.  Therefore, these applications for virtually the same trademarks for the same or nearly identical services sought registration of trademarks for which defendants knew that the required declarations as submitted to the USPTO were false.

35.     The said applications and declarations were submitted to the USPTO by the Cordish Defendants intending that the USPTO rely on said applications and declarations. Thereafter, the USPTO conducted its own search of registered and filed pending trademarks and did not find plaintiff's famous trademark, because it has not yet been filed or registered with the USPTO.  The USPTO therefore relied on the aforesaid applications and declarations as submitted by said defendants that there were no prior similar trademarks in use under 15 U.S.C. § 1052(d), in order for the USPTO to approve the applications for publication. Thereafter, both applications were published and granted a Notice of Allowance.  The applications will mature into issued registrations if and when the applicant can submit a declaration of use of the trademark by the applicant for the services specified in the application, within the time period allowed by the applicable rules and statutes.

36.     By reason of the foregoing, the aforesaid applications should be stricken by the Court as fraudulently filed, void *ab initio* and the Notices of Allowance fraudulently obtained. Further, the Court should enjoin defendants from ever making use of the trademarks applied for in the said applications, or for any similar mark using the word MARQUEE or any variation thereof, by reason of plaintiff's priority and by reason of defendants' fraud on the USPTO.  The law of this Circuit is that a senior party which used the mark before a junior applicant filed its ITU application is entitled to an injunction preventing the applicant from making actual use of

the mark such as would be necessary to have the ITU application mature into a trademark registration.

37.     Upon information and belief, defendant AMC in or about March of 2009 commenced use of the infringing name and trademark "The Marquee" and "The Marquee Bar & Grill" as the name of a new bar and restaurant located at 1400 Main Street, Kansas City, MO 64105. In connection with their bar and restaurant, defendants make repeated and conspicuous use of the name and mark "The Marquee" and "The Marquee Bar & Grill," which are nearly identical to plaintiff's trademark MARQUEE and using many of the same color schemes, high ceiling open design with seating arrangements similar to plaintiff's nightclub.  A true copy of a photograph of defendants' restaurant, as pictured from its internet web site, is annexed hereto as Exhibit B.

38.     Various aspects of AMC's "The Marquee" décor are an obvious attempt to copy plaintiff's décor, such as using the same dark woods and maroon color schemes in their restaurant and on their website, having banquette seating and a second floor mezzanine level overlooking the main floor. These features were all first used by plaintiff and were obviously copied by defendants for their Kansas City restaurant, thus supporting the conclusion that defendants had prior knowledge of plaintiff's MARQUEE trademark and nightclub, and copied the trademark and significant aspects of plaintiff's décor to deliberately take advantage of and trade upon plaintiff's fame and reputation and well known trademark and to generate confusion by use of the nearly identical name.

39.     Defendant AMC has also commenced advertising their "The Marquee" restaurant on the internet and elsewhere.  Upon information and belief, defendant AMC has printed and distributed menus, and other advertising material under the infringing names and operates an

internet domain name www.themarqueekc.com which was not created until February 9, 2009, long after plaintiff's prior use of its trademark MARQUEE in New York, on the Internet at www.marqueeny.com, and in other national venues as alleged herein. Defendant AMC's infringement has just recently come to plaintiff's attention.

40.     Upon information belief, defendants had actual knowledge of plaintiff's long prior use of the trademark MARQUEE for plaintiff's nightclub in Manhattan and other venues and defendants viewed plaintiff's nightclub before developing the design of the infringing Kansas City "The Marquee."

41.     Notwithstanding defendants' copying to suggest an associations with plaintiff, defendant AMC's "The Marquee" tarnishes plaintiff's trademark because the AMC restaurant is a part of an ordinary cinema complex that on closer inspection does not present the chic, upscale appearance, style, service and clientele of a trend-setting, stand-alone nightclub such as plaintiff's MARQUEE nightclub.  For example, AMC's restaurant serves hot dogs, breakfast, and other low priced foods, typical of movie theater fare, not of a top level nightclub.

42.     By reason of the long prior use and fame of plaintiff's trademark MARQUEE, at all relevant times, defendants have had actual knowledge of plaintiff's trade name and trademark MARQUEE previously used and made nationally famous. Upon information and belief, defendants adopted and utilized their infringing "MARQUEE" trademark with actual knowledge of plaintiff's MARQUEE trademark and in reckless disregard of plaintiff's rights in its MARQUEE trademark in order to trade on plaintiff's fame, success and goodwill.

43.     Plaintiff has not authorized or consented in any way to defendants' trademark application, use, advertising or sales utilizing plaintiff's trademark MARQUEE.

44.     Defendants' restaurant services offered to the public under the infringing "MARQUEE" mark are similar to the goods and services offered by plaintiff for which plaintiff has previously used its trademark MARQUEE.

45.     Defendants have willfully infringed for profit plaintiff's MARQUEE trademark.

46.     Defendants' unauthorized acts and infringement, unless enjoined, are likely to cause confusion, to cause mistake and to deceive.  Among other things, defendants' use of the name "The Marquee" and "The Marquee Bar & Grill" which are nearly identical to plaintiff's mark MARQUEE, will continue to cause confusion and is likely to lead others to the mistaken belief that defendants' activities, offerings and services originate from or are in some way associated with or sponsored or approved by plaintiff.

## FIRST CAUSE OF ACTION
## FOR FEDERAL UNFAIR COMPETITION

47.     Plaintiff repeats and realleges the allegations of paragraphs 1 thorough 46 of this Complaint as if set forth in full herein.

48.     Defendant AMC's unauthorized adoption and use of a name and trademark nearly identical to plaintiff's MARQUEE trademark for a restaurant as hereinabove alleged constitute a use in interstate commerce and a false designation of origin and a false and misleading description or representation of goods and services in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities and origin of said defendant's commercial activities, within the meaning and in violation of 15 U.S.C. § 1125(a).  Among other things, defendants' use of the infringing mark has caused confusion and unless enjoined, is likely to lead others to the mistaken belief that the business of defendant AMC at "The Marquee"

originates from or is in some way associated with, related to, or sponsored or approved by plaintiff.

49.     The aforesaid and continuing acts of defendant AMC infringe plaintiff's MARQUEE trademark and constitute unfair competition in violation of 15 U.S.C. § 1125(a). Plaintiff has been damaged by said infringement and unfair competition and plaintiff has no adequate remedy at law for defendants' continuing infringement.  Unless enjoined, defendants' continuing infringement will cause irreparable harm to plaintiff.

### SECOND CAUSE OF ACTION
### FOR FEDERAL UNFAIR COMPETITION

50.     Plaintiff repeats and realleges the allegations of paragraphs 1 thorough 49 of this Complaint as if set forth in full herein.

51.     The Lanham Act 15 U.S.C. § 1052(d) bars registration of any trademark which "[c]onsists of or comprises a mark which so resembles a mark registered ... or a mark or tradename previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."

52.     As hereinabove alleged, the two ITU trademark applications approved and filed by the Cordish Defendants using the word MARQUEE in February 2009 were filed long after plaintiff's prior use of its trademark MARQUEE for nightclub, bar and entertainment services commencing in December 2003 and expanding nationally from 2004-2009. Plaintiff is therefore the senior user of the MARQUEE trademark for those services.

53.     The services listed in the Cordish Defendants' two ITU trademark applications including "night club and entertainment services" are identical to the services plaintiff has been providing in commerce under its MARQUEE trademark since December 2003.  The additional

services listed in the Cordish Defendants' two ITU trademark applications as "restaurant, cocktail lounge and bar services" are identical and similar to the services for which plaintiff has priority of use under its mark.

54.     The trademarks in the Cordish Defendants' aforesaid two ITU trademark applications are nearly identical to plaintiff's MARQUEE trademark previously used and so resemble plaintiff's mark as to likely, when used in connection with the services specified in the said ITU applications, to cause confusion, to cause mistake and to deceive.

55.     Based on plaintiff's seniority of use and prior rights in the MARQUEE trademark for use in connection with its nightclub and bar services, pursuant to 15 U.S.C. § 1052(d), the Cordish Defendants are not entitled to federal registration of the confusingly similar marks applied for, for nearly identical services, regardless of any issues of fraud in the applications. Accordingly, the Cordish Defendants and those in active concert or participation with them should be preliminarily and permanently enjoined from using the trademarks in said applications or any trademark similar to MARQUEE, and the applications should be declared and ordered void *ab initio* and denied allowance or registration under 15 U.S.C. § 1052(d).

**THIRD CAUSE OF ACTION**
**FOR FEDERAL UNFAIR COMPETITION AND FRAUDULENT APPLICATION**

56.     Plaintiff repeats and realleges the allegations of paragraphs 1 thorough 55 of this Complaint as if set forth in full herein.

57.     As hereinabove alleged, applicant LHLLC and the Cordish Defendants were aware of plaintiff's prior use of the MARQUEE trademark when LHLLC filed its two ITU applications for the nearly identical trademark for the same and similar services.

58.     LHLLC's authorized representative falsely declared in the two ITU applications that "no other person, firm, corporation or association has the right to use such mark in

commerce . . . when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake or to deceive." This declaration was required by 15 U.S.C. § 1051(b)(1) and USPTO rules 37 C.F.R. § 2.33(b)(1)and was required to be truthful.

59.     LHLLC's aforesaid knowingly false declarations were submitted with intent that the USPTO rely on said declarations in considering the ITU applications and with intent to deceive the USPTO as to plaintiff's prior use of the mark MARQUEE in order to avoid a rejection under 15 U.S.C. § 1051(d). The aforesaid declarations being required by law and USPTO rules for disclosure of prior users were material to the filing and consideration of the two ITU applications. The USPTO did in fact rely on said declarations in granting Notices of Allowance for the defendants' two ITU applications. Pursuant to 15 U.S.C. § 1051(d), the applications would not have been allowed but for the fraudulent declarations failing to disclose to the USPTO the prior use of plaintiff's MARQUEE trademark.

60.     The Cordish Defendants' aforesaid conduct constitutes fraud on the USPTO and the Notices of Allowance were thereby fraudulently obtained.

61.     Accordingly, the Cordish Defendants are not entitled to federal registration of the confusingly similar marks applied for and the Cordish Defendants and those in active concert or participation with them should be preliminarily and permanently enjoined from using the trademarks in said applications or any trademark similar to MARQUEE, and the applications should be declared and ordered void *ab initio* and denied allowance and denied registration for the fraud committed under 15 U.S.C. § 1051(b)(1).

## FOURTH CAUSE OF ACTION
## FOR FEDERAL TRADEMARK DILUTION

62.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 61 of this Complaint as if set forth in full herein.

63.    Plaintiff's trademark MARQUEE is arbitrary and inherently distinctive for a nightclub and bar. In addition, plaintiff's MARQUEE trademark became nationally famous and well-known and uniquely and exclusively associated with plaintiff and plaintiff's MARQUEE nightclub and bar long prior to defendant AMC's unauthorized adoption and use in commerce of the substantially similar and infringing marks (which are the same as the marks in the ITU applications) and long prior to the Cordish Defendants' threatened use of the two Marquee trademarks in their ITU applications (all such trademarks hereinafter referred to collectively as "Defendants' Unauthorized Similar Marks").

64.    Defendants' aforesaid recent adoption and use of the infringing name and trademark The Marquee and The Marquee Bar and Grill for a restaurant in a cinema theater complex is an unauthorized commercial use of plaintiff's trademark in interstate commerce and likely to cause and has caused dilution by blurring and tarnishment of plaintiff's famous MARQUEE trademark in violation of 15 U.S.C. § 1125(c).

65.    Upon information and belief, defendants' unlawful acts as hereinabove alleged are likely to cause and have caused actual dilution of the distinctive quality, good will, and favorable association of plaintiff's famous MARQUEE trademark.  Defendants' Unauthorized Similar Marks are so similar to plaintiff's previously used trademark MARQUEE as to cause and be likely to cause an association with plaintiff's famous mark that impairs the distinctiveness of plaintiff's mark and is likely to cause and has caused dilution by blurring.

66.    Defendant AMC's use of the mark The Marquee and The Marquee Bar and Grill for a restaurant in a cinema theater complex, having a décor, ambience, clientele and cuisine inferior to that of plaintiff's nightclub harms the reputation and is therefore diluting and

tarnishing of plaintiff's famous trademark MARQUEE for its nightclub and entertainment services and harms the chic, high class, high energy reputation of plaintiff's mark.

67.     Defendant AMC's use of the unauthorized marks has disparaged, damaged and lessened the distinctiveness of plaintiff's MARQUEE trademark by blurring and tarnishing said mark.

68.     Upon information and belief, defendants' infringing and diluting acts as hereinabove alleged have been done intentionally and with a reckless disregard for plaintiff's rights and to create an association with plaintiff's famous mark.  Plaintiff has been damaged by said infringement and dilution and plaintiff has no adequate remedy at law for defendants' continuing dilution.  Unless enjoined, defendants' continuing infringement and dilution will cause irreparable harm to plaintiff and continue to deceive the public.

## FIFTH CAUSE OF ACTION
## FOR VIOLATION OF NY GENERAL BUSINESS LAW § 360-l

69.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 68 of this Complaint as if set forth in full herein.

70.     Plaintiff's trademark MARQUEE is arbitrary and inherently distinctive for a nightclub and bar. In addition, since long prior to the acts of defendants hereinabove alleged, plaintiff's MARQUEE trademark has become well-known and is uniquely and exclusively associated with plaintiff and plaintiff's MARQUEE nightclub and other events.

71.     Plaintiff's MARQUEE trademark has been used successfully by plaintiff for many years prior to defendants' adopting and filing trademark applications for Defendants' Unauthorized Similar Marks and plaintiff's trademark has acquired secondary meaning to uniquely identify plaintiff's MARQUEE nightclub and other events.

72.     Defendants' aforesaid Unauthorized Similar Marks recently adopted and used by AMC and as filed for in trademark applications by the Cordish Defendants are nearly identical and are substantially similar to plaintiff's trademark "MARQUEE." Defendants' wrongful conduct as hereinabove alleged is likely to cause and upon information and belief, has caused injury to plaintiff's business reputation and dilution of the distinctiveness of plaintiff's MARQUEE trademark and has disparaged, impaired, damaged and blurred and lessened the distinctiveness of plaintiff's MARQUEE trademark and diminished plaintiff's reputation by blurring and tarnishing said mark.

73.     Defendants' use and planned use of Defendants' Unauthorized Similar Marks for restaurant and related services as hereinabove described lacks the prestige and quality associated with plaintiff's mark and is in a manner inconsistent with and diluting and tarnishing the distinctive quality of plaintiff's trademark MARQUEE.  As a result, plaintiff's business reputation and good will and the favorable and distinctive association which plaintiff's MARQUEE trademark has with the public, have been and are likely to be impaired, damaged and diminished by blurring and tarnishment.

74.     Upon information and belief, defendants' infringing and diluting acts as hereinabove alleged have been done intentionally and with a reckless disregard for plaintiff's rights.  Plaintiff has been damaged by said infringement and dilution and plaintiff has no adequate remedy at law for defendants' continuing infringement and dilution.  Unless enjoined, defendants' continuing infringement and dilution will cause irreparable harm to plaintiff.

## SIXTH CAUSE OF
## ACTION FOR COMMON LAW TRADEMARK INFRINGEMENT

75.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 74 of this Complaint as if set forth in full herein.

76.     Defendants' acts, as hereinabove alleged, are causing and, unless enjoined, are likely to cause willfully and recklessly, continuing confusion by consumers and others as between plaintiff and defendants and to create the false impression that plaintiff is responsible for or affiliated with defendants.  Accordingly, defendants' acts constitute unfair competition under the common law of New York.

77.     Plaintiff has been damaged by said unfair competition and has no adequate remedy at law for defendants' continuing unfair competition.   Unless enjoined, defendants' continuing infringement and unfair competition will cause irreparable harm to plaintiff.

## SEVENTH CAUSE OF
## ACTION FOR STATE UNFAIR COMPETITION

78.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 77 of this Complaint as if set forth in full herein.

79.     Defendants' acts, as hereinabove alleged, are likely to cause and have caused continuing confusion by consumers and others as between plaintiff and defendants and to create the false impression that plaintiff is responsible for or affiliated with defendants.

80.     Upon information and belief, defendants' use and planned use of trademarks which are nearly identical to plaintiff's trademark MARQUEE for the same and similar services will foster or have fostered an association with plaintiff's MARQUEE nightclub and other MARQUEE events, as hereinabove alleged and will deceive and confuse or have deceived and confused the public as aforesaid, and will enable and have enabled defendants thereby to profit unjustly from and to misappropriate to themselves plaintiff's good will and the benefits of plaintiff's time, skill, labor and expenditures in the creation, development and promotion of its distinctive trademark MARQUEE and its upscale nightclub and entertainment events with which

plaintiff's trademark is uniquely associated. Defendants' actions as alleged constitute unfair competition with plaintiff under the common law of the State of New York.

81.   Plaintiff has been damaged by said unfair competition and has no adequate remedy at law for defendants' threatened and continuing unfair competition. Unless enjoined, defendants' threatened and continuing unfair competition will cause irreparable harm to plaintiff and continue to deceive the public.

## DAMAGES AND RELIEF

82.   The aforesaid acts of defendants have caused, as their proximate, necessary and direct result, substantial damages and injury to the business, property, and reputation and good will of plaintiff in an amount to be determined at trial, and unless enjoined will continue to cause such damages.

83.   The aforesaid uses and threatened uses by defendants of the infringing name and trademarks using the word "MARQUEE" and defendant AMC's "The Marquee" and "The Marquee Bar & Grill" which are confusingly similar to plaintiff's MARQUEE trademark, do now and unless preliminarily and permanently enjoined will continue to (a) confuse and deceive the public into believing that defendants' restaurants, businesses and services are related to, sponsored by or connected with plaintiff's; (b) injure plaintiff's business reputation and plaintiff's good will; and (c) unjustly enrich defendants. Defendants will thereby cause plaintiff irreparable damage unless restrained and enjoined.

84.   The aforesaid fraudulent trademark filing, willful and reckless infringement, unfair competition, dilution and disregard of plaintiff's rights make this an exceptional case warranting an award of treble damages and reasonable attorneys' fees in favor of plaintiff pursuant to 15 U.S.C. § 1117.

## RELIEF

WHEREFORE, plaintiff demands judgment against defendants as follows:

A.      Preliminary and permanent injunctions enjoining defendants, and their affiliates, subsidiaries and their respective partners, officers, agents, servants, employees, attorneys, and all those in active concert or participation with them or any of them who receive actual notice of the order and judgment of this Court:

(i)      from any use of any name, or trademark, which includes in whole or in part the word "MARQUEE;"

(ii)     from using any other mark, word, name or symbol similar to plaintiff's MARQUEE trademark which is likely to cause confusion, mistake or to deceive;

(iii)    from infringing plaintiff's rights in its aforesaid MARQUEE trademark, or using any colorable imitation thereof;

(iv)     from continuing the acts of unfair competition and dilution herein complained of; and

(v)      from taking any further steps to prosecute or assign the Cordish Defendants' two ITU federal trademark applications for THE MARQUEE (Application Serial No. 77662010) and THE MARQUEE BAR & GRILL (Application Serial No. 77662227) or from obtaining registration therefor; and

(vi)     from filing any state or federal trademark applications, copyrights, or otherwise seeking to obtain intellectual property rights in any name, goods, services or business using, in whole or in part, the word MARQUEE.

B.      Declaring by reason of plaintiff's priority of use that the Cordish Defendants are not entitled to federal registration of the confusingly similar marks applied for and that the applications are declared and ordered void *ab initio* and denied allowance or registration under 15 U.S.C. § 1051(b)(1) and 15 U.S.C. § 1052(d); and

C.      Directing the Cordish Defendants to withdraw the aforesaid two ITU trademark applications as void *ab initio* and by reason of fraud on the USPTO; and

D.      Declaring that the Cordish Defendants have committed fraud on the U.S.P.T.O. in filing the aforesaid two ITU trademark applications and pursuant to the Court's authority under 15 U.S.C. §§ 1119 and 1121 directing the USPTO to strike and deem withdrawn the aforesaid two ITU trademark applications of the Cordish Defendants as void *ab initio* and by reason of fraud on the USPTO; and

E.      Awarding plaintiff all of defendants' profits, and plaintiff's damages by reason of the acts of willful trademark infringement, unfair competition and dilution complained of, said damages to be trebled pursuant to 15 U.S.C. § 1117;

F.      Awarding plaintiff punitive damages for defendants' willful and reckless and continuing unfair competition and infringement of plaintiff's rights continuing after actual or constructive notice of same;

G.      Awarding plaintiff its costs, expenses and reasonable attorneys' fees to the extent allowed by law; and

H.      Awarding plaintiff such other or further relief as the Court may deem just and proper.

                                         SCHWARTZ & THOMASHOWER LLP


Dated: July 9, 2010                      By: _William Thomashower_____
       New York, New York                     William Thomashower
                                              Rachel Schwartz

                                         15 Maiden Lane, Suite 705
                                         New York, New York 10038
                                         Tel: (212) 227-4300

                                         Attorneys for Plaintiff
                                         10th AVENUE HOSPITALITY
                                         GROUP, LLC